UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                       Case No.  2:08-cv-245-FtM-99DNF

TRACT J03-01, 0.5 ACRES OF LAND,
MORE OR LESS, IN COLLIER COUNTY,
FLORIDA, MILTON S. KENT, ET AL.,

        Defendant.

_____

**<u>OPINION AND ORDER</u>**

_____This matter came before the Court on October 13, 2009, for a bench trial on the matter of just compensation in 33 condemnation proceedings, including this case.  All parties known or believed by plaintiff to have an interest in the property have been properly served or notified as provided by Fed. R. Civ. P. 71.1.  No property owner or claimant appeared at trial except for Mr. Milton Kent, who testified and submitted evidence.

The Court heard testimony from John R. Underwood, Jr., President and owner of Appraisal and Acquisition Consultants, Inc. since 1983, who testified on behalf of the government regarding the appraised value of the parcels of land subject to condemnation proceedings.  Mr. Underwood started his career as an appraiser in 1971 working for First Federal Savings & Loan of Lake Worth, Florida.  Mr. Underwood received training from the Society of Real Estate Appraisers, and the Appraisal Institute.  Mr. Underwood received his MAI (general) designation in

1981, which requires a minimum of 5 years experience and peer review, and his SRA (residental) designation in 1979, from the Appraisal Institute. In compliance with continuing education obligations, Mr. Underwood must complete 30 hours every 2 years for the State of Florida and 100 hours every 5 years for the Appraisal Institute to maintain the designations. Mr. Underwood has previously testified and was qualified as an expert in excess of 100 times, over approximately 50 cases in condemnation cases, including on behalf of homeowners. Mr. Underwood has appraised office buildings to wetlands, and has conducted about 1000 appraisals in the everglades and 200 in the Big Cypress project. The Big Cypress National Preserve was established in the early 1980s to protect flora and fauna. An expansion of Big Cypress was Congressionally authorized.

Mr. Underwood testified as to the common characteristics of the land as: (1) wetlands; (2) similarly zoned; (3) difficult to access; and (4) all located in the expansion area. Appraisal was conducted by air to determine market value using a sales comparison approach after rejecting the cost and income approaches as inappropriate. The market value was determined by comparing to sales in the Fakahatchee Strand, where the market is limited, the values range from a low of $800.00 to a high of $2,000.00, and sales were by negotiation with the State. The subject tracts all have the highest and best use of passive recreational, meaning the land can be enjoyed but regulations prohibit development. No taking has yet occurred in any of these cases. The oil and gas rights were not taken as part of the tracts of land,

however, the mineral rights will be taken even though no commercial viability is known. Mr. Underwood provided the market value of the relevant parcel of land through a letter, effective October 9, 2009, addressed to the Assistant United States Attorney. (Exh. 2.) The market value was assessed as $750.00 for the 0.5 acre at issue. On cross examination, Mr. Kent elicited that the appraisal was conducted by helicopter approximately 200 to 400 feet in the air and using a global positioning system device (GPS).

Mr. Kent testified that the government does not know where the boundaries of the land are and therefore is not in a position to conduct a taking. Mr. Kent submitted into evidence a Boundary Survey indicating different boundary lines than those provided by the government. Mr. Kent spent $1,000.00 for the survey. (Exhs. A and B.) Mr. Kent states that the boundary is approximately 990 feet Northeast of where the National Park has delineated the boundary. Mr. Kent stated, regardless of valuation, that he did not want to sell his land and would like to keep his portion as some individuals have been permitted to do in the past. Mr. Kent further testified that he paid $1,500.00 for the land and current regulations permit the building of one recreational facility.

"Just compensation means the full monetary equivalent of the property taken. . . . [T]he [Supreme] Court at an early date adopted the concept of market value: the owner is entitled to the fair market value of the property at the time of the taking." United States v. Reynolds, 397 U.S. 14, 16 (1970)(citations omitted). Comparable sales

at the time of the taking is still the best evidence of fair market value.  See generally United States v. 45,131.44 Acres of Land, 483 F.2d 569 (10th Cir. 1973); United States v. 320.0 Acres of Land, 605 F.2d 762 (5th Cir. 1979); United States v. 47.14 Acres of Land, 674 F.2d 722 (8th Cir. 1982); United States v. 819.98 Acres of Land, 78 F.3d 1468 (10th Cir. 1996); United States v. 4.85 Acres of Land, 546 F.3d 613 (9th Cir. 2008).  A taking for public use allows the government to essentially "confiscate[] the additional (call it "personal") value" that an owner obtains from the property as long as market value is paid and the taking is in fact for public use. Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 464 (7th Cir. 1988).  See also Kimball Laundry Co. v. United States, 338 U.S. 1, (1949)(describing personal value as "the burden of common citizenship"); 320.0 Acres of Land, 605 F.2d at 782 n.24 ("Value unique to the Owner is not compensable either.").  The purpose of the taking is not disputed in this case and the objection that the Fakahatchee Strand is not comparable is rejected.  The Court finds that the fair market value is $1,500.00 an acre.

Under Federal Rule of Civil Procedure 71.1(c), a complaint must contain "a description sufficient to identify the property."  If "the boundaries of the parcel can be located on the ground either by the legal description in the instrument, or from information contained in the deed, the instrument is adequate."  United States v. 62.57 Acres of land in Yuma County, Ariz., 449 F.2d 5, 10 (9th Cir. 1971).  The Court finds that the legal description provided in the Complaint and

4

in Mr. Kent's survey are the same and adequate.

Having considered the testimony and evidence presented, the Court is persuaded that there is no dispute as to the legal description for purposes of condemnation, there is no dispute to the actual size of the tract or the methodology employed to determine the per acre value of the land, and an alternative valuation of just compensation is not available.

The Court, having considered the testimony and other evidence, hereby **ORDERS AND ADJUDGES:**

1.  The Plaintiff has the right to condemn the subject properties for the public purpose set forth in the Complaints in Condemnation.

2.  Just Compensation for the taking of the fee simple title to Property, is **$1,500.00 per acre,** rounded up to the nearest 100, for a total value of **$750.00**.  Payment of the Just Compensation will be in full satisfaction of any and all claims of whatsoever nature against the Plaintiff by reason of the institution and prosecution of this action and taking of the subject properties.

3.  Plaintiff will deposit the Just Compensation determined at trial into the Registry of the Court within **SIXTY (60) DAYS** of this Order.  The Clerk shall administratively close the file pending the entry of final judgment.

4.  On the date of the deposit of the Just Compensation into the Registry of the Court, title to the Property will vest in the Plaintiff and the Plaintiff will be entitled to immediate possession

of the Property.  Upon making such deposit, Plaintiff will timely notify the Court and move for a final judgment of condemnation by filing a motion.

5.  The Just Compensation will be subject to all real estate taxes, liens and encumbrances of whatsoever nature existing against the Property at the time of vesting the title thereto in the Plaintiff and all such taxes, liens, encumbrances of whatsoever nature will be payable and deductible from the Just Compensation.

6.  The Clerk of the Court will retain the deposited Just Compensation until further Order of this Court upon consideration of any applications for distribution filed by persons claiming or asserting an interest in the Just Compensation.  Plaintiff's counsel shall notify the Clerk of the Court as each remaining case reaches a **zero balance** so that the case may be closed.

7.  In the event that the Just Compensation and any interest, or any part thereof, remains unclaimed for a period of **FIVE (5) YEARS** from the date of this Opinion and Order, the Clerk of the Court, pursuant to 28 U.S.C. § 2042, will cause such sum, together with any interest, to be deposited in the United States Treasury in the name and to the credit of the United States of America or the National Park Service, as appropriate.

**DONE AND ORDERED** at Fort Myers, Florida, this ___15th___ day of October, 2009.

JOHN E. STEELE
United States District Judge

Copies:
Kyle Scott Cohen, AUSA
Counsel of Record
Mr. Milton Kent

Intake
Finance